IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DAVID CARL WORMINGTON,           §
TDCJ-CID NO.137545,              §
        Petitioner,          §
v.                               §       CIVIL ACTION NO. H-09-1913
                                §
RICK THALER,                     §
        Respondent.          §

OPINION ON DISMISSAL

     Petitioner David Carl Wormington, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his felony conviction for solicitation of capital murder.  (Docket Entries No.1, No.2).  Respondent has filed a motion for summary judgment.  (Docket Entry No.16).  Petitioner has filed a response to the motion.  (Docket Entry No.17).  After considering all of the pleadings and the entire record, the Court will grant respondent's motion for summary judgment and dismiss this habeas petition.

I. BACKGROUND AND PROCEDURAL HISTORY

     A jury in the 184th Criminal District Court of Harris County, Texas, heard the following evidence, including evidence heard at a pretrial suppression hearing, as summarized in pertinent part by the First Court of Appeals for the State of Texas:

> Gary Johnson, an investigator with the Harris County District Attorney's Office, testified that on October 28, 2004, another investigator in his office asked him to go interview "an informant ... who potentially had some information about a solicitation of capital murder."
>
> Johnson interviewed M.S., an inmate at the Harris County Jail, who told Johnson that a fellow inmate wanted to have his wife killed.  Johnson gave M.S. "a phone number and a name and a story to give to the guy," and told

M.S. to have the inmate call Johnson if he was interested. Johnson instructed M.S. not to further proceed on the matter if the inmate was not interested. Later that evening, Johnson received a collect telephone call at his home from the Harris County Jail. Johnson first spoke with M.S., who told Johnson, "David wants to talk to you." M.S. "hollered Dave," and a man came to the phone. That individual, later identified as appellant, introduced himself as "David" and "contracted with [Johnson] to kill his wife."

Johnson explained that because appellant had a pending charge against him, the permissible scope of his conversation was limited. Appellant "did all the talking," and Johnson did not ask appellant any questions. In order to confirm his identity, Johnson arranged for another telephone conversation with appellant. Observing the pay phone at the jail, a Harris County Sheriff's deputy confirmed that appellant in fact used the phone to speak with Johnson. In their second conversation, appellant gave Johnson instructions "on how to kill and where to kill and when to kill" his wife. Johnson explained that "all [Johnson] did was listen" and "didn't really elicit anything."

On cross-examination, Johnson testified that M.S. "is just a petty thief" and calls Johnson "every time he goes to jail." M.S. had previously contacted Johnson "[p]robably five or six times" with information regarding an inmate. In this case, M.S. initially contacted Hal Kennedy, a Houston Police Department homicide detective, who then contacted Johnson, who met with M.S. at the jail. When asked by appellant's counsel what he told M.S. on how to "proceed with this solicitation," the following exchange occurred,

> [Johnson]:  Yeah. I told him I said, "[D]on't approach the subject.  If he brings it up again, just tell him, you know, you don't want any part, but you will give him a number if he wants to talk to the guy, he will set up the call."

> [Appellant's Counsel]:  Okay.  Did you tell [M.S.] kind of what story to tell him on how to come up with the solicitation case?

> [Johnson]:  Actually, that was all done. [M.S.] also told him that I was his half brother.  And [M.S.] is black.  So, I hadn't-that was all done before I got involved.

Johnson explained that M.S. was in custody for stealing "two pork chops and a bag of chips."  In exchange for his cooperation in appellant's case,

M.S. was released from jail "four or five days early."  At the conclusion of the pretrial hearing, the trial court denied appellant's motion to suppress.

During the trial, Johnson further testified that, during their first telephone conversation, appellant told Johnson where he lived and how he wanted his wife killed.  When Johnson asked appellant if anyone other than his wife would be at home, appellant explained that he "wanted it to look like an accident."  Appellant initially suggested that Johnson murder his wife inside the home, but then suggested that Johnson drown her "in an old dirty pool that hadn't been cleaned in several years and she had been talking about cleaning it, so [Johnson] could drown her in there and it would look cool."  Appellant provided Johnson with directions to the home and told Johnson his wife's daily schedule, instructing Johnson that he wanted his wife killed before his daughter returned home from school, so that "she wouldn't find her mother floating in the swimming pool." Appellant was to pay Johnson "$10,000 as soon as [appellant] got out" of jail.  Toward the end of their conversation, Johnson asked appellant, "Are you sure this is what you want?  Because you and I probably won't talk again.  And you can't pull out after this."  Appellant responded, "I don't want to pull out.  Do it."

*Wormington v. State*, No. 01-06-00542-CR, 2007 WL 852656, *1-*2 (Tex. App.—Houston [1st Dist.] 2007, pet ref'd) (footnotes omitted).  The jury convicted petitioner of solicitation of capital murder in cause number 10005810.  *Wormington v. State*, No. 01-06-00542-CR, Clerk's Record, page 170.  During the punishment hearing, petitioner stipulated to several remote criminal cases. *Id*., Reporter's Record, Volume 5, pages 6-9.  The jury also heard graphic testimony about the aggravated sexual assault of Amber Daugherty, the offense for which petitioner had been charged and for which he was detained in jail when he committed the solicitation of capital murder offense.  *Id.*, pages 13-108.  Thereafter, the jury assessed punishment at seventy-five years confinement in TDCJ-CID and a $10,000.00 fine.  *Id.*, Clerk's Record, page 181.

On direct appeal, petitioner complained that "he was 'denied his constitutional right to present a defense' when the trial court erred in excluding evidence of the number of times that the State had used, as an informant, a fellow jail inmate and, alternatively, that the

error affected his substantial rights." *Wormington*, 2007 WL 852656 at *1. The state intermediate appellate court found that no error had been preserved and affirmed the conviction. *Id*. at *3. The Texas Court of Criminal Appeals refused his petitioner's *pro se* petition for discretionary review. *Wormington v. State*, P.D.R. No. 0914-07.

Petitioner's first state habeas application was dismissed because a direct appeal was pending. *Ex parte Wormington*, Application No.WR-69-416-01 at action taken page. In his second state habeas application, petitioner sought relief from his conviction on the following grounds:

1.      He was denied the effective assistance of counsel at trial because his trial counsel:

        a.      Failed to conduct any pre-trial investigation concerning witnesses in the case;

        b.      Advised petitioner to plead to all the prior convictions for impeachment purposes;

        c.      Was not prepared for trial even though she was appointed for over 22 months;

        d.      Did not interview Bonnie Wormington Walker, Amber Daughtery, Marshall Smith, or Gary Johnson;

2.      The state district court denied his request for an entrapment instruction in the jury charge;

3.      The prosecution witnesses committed perjury and gave false testimony;

4.      He was denied the right to counsel when Gary Johnson and Marshall Smith spoke to him in the absence of counsel;

5.      State District Judge Mary Bacon was biased toward him because she granted his divorce and awarded his wife all of their property;

4

6.     The audio tapes of his conversations with Gary Johnson were not accurate reproductions of the original tapes;

7.     Evidence of remote prior convictions and the extraneous offense of aggravated sexual assault were admitted during the punishment phase of trial; and,

8.     Gary Johnson illegally recorded their telephone conversation without disclosing that the conversation was being recorded.

*Ex parte Wormington*, Application No.WR-69,416-03, pages 2-48.  The state district court, sitting as a habeas court, recommended that relief be denied and entered written findings.  *Id.*, pages 106-115.  The Texas Court of Criminal Appeals denied the application without a written order on the findings of the trial court without a hearing.  *Id.* at action taken page.

In the pending petition, petitioner seeks federal habeas relief from these convictions on the following grounds:

1.     Petitioner was denied the effective assistance of counsel at trial because trial counsel failed to:

    a.     Conduct any pre-trial discovery;

    b.     Prepare for trial;

    c.     Interview any witnesses;

    d.     Submit a timely instruction on the entrapment defense;

    e.     Advise petitioner not to plead true to all remote prior convictions for the State to use for impeachment purposes;

    f.     Object to hearsay evidence from Gary Johnson about Marshall Smith;

    g.     Have the audio tapes analyzed; and,

    h.     File a motion for new trial;

2.     The state district judge abused her discretion by denying his request to instruct the jury on the defense of entrapment;

5

3.      Gary Johnson and the prosecution gave false accusations throughout the trial;

4.      Petitioner was denied the right to counsel when Gary Johnson spoke to him about the solicitation charge without petitioner's trial counsel being present;

5.      The state district judge was biased because she granted petitioner's divorce and divided their property;

6.      The tapes admitted at trial were altered and not trustworthy;

7.      The State admitted evidence of several prior offenses and an extraneous offense of aggravated sexual assault, which was dismissed after trial; and,

8.      Gary Johnson illegally recorded the phone conversations with petitioner because he did not inform petitioner that the call was being recorded.

(Docket Entries No.1, No.2).

Respondent moves for summary judgment on grounds that (a) petitioner has failed to meet his burden of proof under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), (b) all but two claims are procedurally barred, and (c) the remaining claims fail on the merits.  (Docket Entry No.16).

## II. DISCUSSION

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56.  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d

6

272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief. *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in his petitions for discretionary review and state habeas corpus applications, which the Texas Court of Criminal Appeals denied without written order.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in his state habeas application have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2).  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

      "The standard is one of objective reasonableness."  *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)).  Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers")).

      A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413.  A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  To be unreasonable, the state decision must be more than merely incorrect.  *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).  A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  *Id.*  Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts

those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases,"  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules.  *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 2254 Cases in District Courts).  Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party.  *Id.*  Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct.  *Id.*

Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).  Thus, *pro se* pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them.  *Haines*, 404 U.S. at 521.  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## A. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas

corpus petitioner's claim that he was denied effective assistance of trial counsel is measured by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, petitioner must establish that his counsel's performance was deficient and that the deficiency prejudiced his defense.  *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002) (citing *Strickland*, 466 U.S. at 692).  The failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Counsel's performance is deficient when the representation falls below an objective standard of reasonableness.  *Ogan*, 297 F.3d at 360.  Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy."  *West v. Johnson,* 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1993).  Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Strickland*, 466 U.S. at 687-90.  A deficiency in counsel's performance, standing alone, does not equal ineffective assistance of counsel if no actual prejudice is demonstrated.

Counsel's deficient performance results in actual prejudice when a reasonable probability exists "that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or

the proceeding fundamentally unfair."  *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Pratt*, 142 F.3d at 232 (quoting *Lockhart*, 506 U.S. at 372).

A claim of ineffective assistance of counsel presents a mixed question of law and fact.  *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  Because petitioner's ineffective-assistance claims were previously considered and rejected on state habeas corpus review, the state court's decisions on those claims will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner complains that he was denied the effective assistance of counsel at trial on several grounds discussed below.  (Docket Entries No.1, No.2).  Respondent contends that petitioner has not rebutted the findings and conclusions of the state habeas courts as required by the AEDPA and that his claims fail on the merits.  (Docket Entry No.16).

The record reflects that petitioner's trial counsel Kimberly Abbey Parks ("Parks") submitted an affidavit that the state habeas courts found to be credible.  *Ex parte Wormington*, Application No.WR-69,416-03, pages 97-99; 109.  Based on this affidavit and the trial record, the state habeas courts found that Parks's representation "was sufficient to provide the applicant with reasonably effective assistance of counsel, as guaranteed by the U.S. and State constitutions."  *Id.*, page 112.  The state habeas courts also made specific findings with respect to each of the following claims and found that petitioner failed to show that Parks's performance was deficient or prejudicial.  *Id.*, pages 109-112.

### 1. Preparation for Trial

Petitioner claims that Parks was not prepared for trial because she asked for a continuance on the day of trial and she did not interview any of the State's witnesses.  Petitioner claims that his ex-wife Bonnie Wormington Walker ("ex-wife") and Amber Daugherty ("Daugherty"), the complainant in the extraneous aggravated sexual assault offense, concocted the aggravated sexual assault charge so that his ex-wife could get petitioner out of the way and take everything from him in divorce proceedings.[1]  (Docket Entry No.2).  Petitioner claims had Attorney Parks interviewed his ex-wife and Daugherty, all of this information would have come out.  (*Id.*).

Counsel "has a duty to make a reasonable investigation of the defendant's case or to make a reasonable decision that a particular investigation is unnecessary."  *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  "'The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . In particular, what investigation decisions are reasonable depends critically on such information.'"  *Boyd v. Johnson*, 167 F.3d 907, 910 (5th Cir. 1999) (quoting *Strickland*, 466 U.S. at 688).  The evidence must have been made known to defense counsel by petitioner, and must have been specific, admissible, and significant in order for counsel's failure to investigate to be constitutionally deficient.  *Carter v. Johnson*, 131 F.3d 452, 465 (5th Cir. 1997).  "Defense counsel is not required 'to investigate everyone whose name happens to be mentioned by the defendant.'"  *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985).  To determine the

---

[1] Petitioner claims that the dismissal of the aggravated sexual assault charge after he was sentenced in the present case is proof that the charge was bogus.  (Docket Entry No.2).

reasonableness of counsel's decision to limit the scope of his investigation under prevailing professional norms, the Court analyzes such conduct as follows:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690-91.  Moreover, as with any ineffective assistance of counsel claim, the petitioner must prove that an alleged breach of his attorney's duty to investigate "resulted in an actual and substantial disadvantage to the course of his defense."  *Baldwin v. Maggio*, 704 F.2d 1325, 1333 (5th Cir. 1983).  "In order to satisfy the prejudice prong of *Strickland*, [a defendant] must show 'more than the mere possibility of a different outcome.'  [He] must present 'evidence of sufficient quality and force to raise a reasonable probability that,' had it been presented to the jury, the outcome would have been different."  *United States v. Drones*, 218 F.3d 496, 504 (5th Cir. 2000) (citations omitted).

The record shows that Attorney Parks conducted some pre-trial discovery and interviewed Gary Johnson.   On January 6, 2005, she moved for the appointment of an investigator, which the state district court granted the same day.  *Wormington*, No.01-06-00542-CR, Clerk's Record, pages 18-19.  In his Summary of Investigation, attached to Park's affidavit, investigator Travis Johnson stated that he reviewed the file with Parks, interviewed petitioner and obtained the name of a potential witness, who he was unable to find; he also reviewed the court file and made copies of various documents.  *Ex parte Wormington*, Application No.WR-

69,416-03, pages 97, 101.   Almost a month later, Johnson attempted to interview petitioner a second time but petitioner told Johnson that he did not have anything to say and that there was no one else to interview.   *Id.*   Johnson indicated that petitioner did not want him to interview his ex-wife.   *Id.*

Parks attested in state habeas proceedings that she reviewed the offense report and visited petitioner but his cooperation was inconsistent.   *Id.*, page 97.   Parks also obtained transcripts of all the audio tapes, interviewed Gary Johnson, reviewed the State's file, reviewed petitioner's mental health status, and obtained records of prior treatments.   *Id.* at 97-98.   She did not interview his ex-wife because petitioner instructed her not to speak with her.   *Id.*, page 98. Nor did she interview Amber Daugherty, the complainant in the extraneous sexual assault case, because she did not believe that Daugherty would talk with her or that she would have anything favorable or material to add to the defense.   *Id.*   The state habeas courts made positive findings regarding Parks's investigation based on her credible attestations; the state courts further found that petitioner had failed to show that her investigation and preparation for trial was deficient or prejudicial.   *Id.*, pages 109-110.

Petitioner presents nothing to contravene Parks's attestation that he instructed her not to contact his ex-wife or that complainant Daugherty would have talked to Parks[2] or that her testimony would have proven helpful to his defense.[3]   Daugherty's graphic testimony during the

---

[2] Petitioner attempts to rebut Parks's attestation that Daugherty was afraid of petitioner and probably would not have talked to her by Daugherty's testimony during the punishment phase of trial, in which she said that she initially asked petitioner's ex-wife to get petitioner so that he could sit with her until the police arrived.   (Docket Entry No.17).   The record shows that Daugherty testified that she asked for petitioner before the police discovered petitioner hiding in a trailer on the property and in possession of the same clothing worn by the rapist.   *Wormington v. State*, No.01-06-00542-CR, Reporter's Record, Volume 5, pages 13-48.

[3] In fact, Parks sought to keep the jury from hearing evidence of the aggravated sexual assault charge during the guilt-innocence phase of trial by requesting a motion in limine.   *Wormington v. State*, No.01-06-00542-CR, Reporter's Record, Volume 2, pages 12-15.

14

punishment phase of trial regarding the aggravated sexual assault, *Wormington v. State*, No.01-06-00542-CR, Reporter's Record, Volume 5, pages 13-48, supports Parks's belief that Daughtery had nothing favorable or material to add to petitioner's defense in the capital murder solicitation case.

Petitioner also complains that Parks did not interview informant Marshall Smith, about whom investigator Gary Johnson testified as follows, in pertinent part:

> Marshall Smith explained to me that he had been in the cell for like six weeks with this individual, and the individual had progressively become more adamant about having his wife killed, and the last day or so, because of something that was occurring, he had become very agitated and wanted it done rapidly.

*Id.,* Volume 4, page 95.  Petitioner complains that had Parks interviewed Smith she would have discovered the nature of his conversations with Smith and would have subpoenaed Smith to appear in court.  (Docket Entry No.2).

Parks attested in state habeas proceedings that she did not interview the informant Smith because the State had informed her that they were not going to call him as a witness and the offense was on audio tape; therefore, she did not believe that Smith could have provided anything to assist their defense.  *Ex parte Wormington*, Application No.WR-69,416-03, page 98. The state habeas courts found that based on her credible affidavit, Parks's decision not to interview Smith was neither deficient nor prejudicial.  *Id.*, page 110.

Petitioner, however, complains that the State bench-warranted Smith to the Harris County Jail and that Parks should have interviewed him or subpoenaed him because Smith's testimony was crucial to their theory of the case, *i.e.*, petitioner was entrapped by Smith, who was working with Johnson as an agent of the State.  (Docket Entry No.17).

15

Parks's decision not to interview Smith was based on her professional judgment that this particular investigation was unnecessary.  Petitioner does not state his version of the "true nature" of his conversations with Smith and he presents no evidence to show that Smith would have told Parks anything other than what Johnson testified that he said at trial.  Therefore, petitioner fails to overcome the state habeas courts' finding.

Parks also attested that she was prepared to defend petitioner at trial.  *Id*. at 97.  The trial record reflects that Parks requested a continuance at the pretrial hearing because petitioner had refused to see her at jail the day before trial and had been uncooperative with the investigator.  *Wormington v. State*, No.01-06-00542-CR, Reporter's Record, Volume 2, pages 8-10.  The state habeas courts found that the record showed that counsel requested a continuance, not because she was unprepared, but "because she had gone to see the applicant at the jail on June 4 to prepare the applicant for trial, and the applicant refused to see her."  *Ex parte Wormington*, Application No.WR-69,416-03, page 109.  Petitioner presents nothing to contravene the state habeas courts' findings or to show that he was prejudiced in any way by Parks's alleged lack of preparation.  "Mere general assertion that prejudice resulted from lack of preparation is insufficient to reverse a conviction for ineffective assistance of counsel."  *U.S. v. Oakley*, 827 F.2d 1023, 1026 (5th Cir. 1987).

<u>2. Entrapment Instruction</u>

Petitioner next claims that Attorney Parks was ineffective for not submitting an instruction on the entrapment defense until the end of trial; petitioner contends had she requested such an instruction at an earlier time, the outcome would have been different.  (Docket Entry No.2).

16

Parks attested that she submitted a jury charge on entrapment, argued for the inclusion of the instruction, and backed up such argument with relevant case law, but the state district judge denied her request. *Ex parte Wormington*, Application No.WR-69,416-03, page 98. The judge disagreed with her argument. *Id*. The record supports Parks's attestation. *See Wormington v. State*, No.01-06-00542-CR, Reporter's Record, Volume 4, pages 125-30.

The state habeas courts agreed with Parks's attestation but found that the state district judge determined the evidence did not support inclusion of the instruction in the charge. *Ex parte Wormington*, Application No.WR-69,416-03, page 110. The state habeas courts also found that petitioner failed to explain how an earlier request for the entrapment instruction would have affected the outcome of the proceeding, and therefore, failed to show that Parks rendered constitutionally ineffective assistance with respect to the instruction. *Id*.

Petitioner's conclusory statement that the outcome of the proceeding would have been different fails to overcome the state habeas courts' findings.

<u>3. Remote Convictions</u>

Petitioner also complains that Parks advised him to plead true to all of his prior convictions, however, remote, for the State to use for impeachment purposes. (Docket Entry No.2). Petitioner claims that all but one of the cases were misdemeanors and more than ten years old; therefore, they were inadmissible and served only to inflame the minds of the jury. (*Id*.). Petitioner contends that had he not pled true to these convictions, his sentence would not have been so harsh. (*Id*.).

The record reflects that Attorney Parks's recommendation to petitioner to stipulate to the remote charges was based on her professional judgment. Parks attested in state habeas proceedings that petitioner's solicitation charge was not enhanced; therefore, he did not

plead to any prior offense.  *Ex parte Wormington*, Application No.WR-69,416-03, page 98.  She attested that she advised petitioner to stipulate to his prior cases in punishment because the State had informed her that it was prepared to prove up such judgments and in her experience that a defendant, once convicted, "has nothing to lose by admitting to them, and can actually appear to accept responsibility for his past by agreeing to the stipulation."  *Id.*  She noted that petitioner did not testify so the prior convictions were not used for impeachment during guilt-innocence."  *Id.*

The state habeas courts found that petitioner's case was not enhanced; therefore, he did not enter a plea of true to the remote convictions, that the prior offenses were not used for impeachment purposes because petitioner did not testify, that had petitioner not stipulated, the State was prepared to introduce evidence of petitioner's prior convictions during the punishment phase of trial, and that petitioner failed to show that any of his prior convictions were otherwise inadmissible.  *Id.* at 111.  The state habeas courts found that petitioner failed to show that Attorney Parks's advice to agree to the stipulation of prior charges introduced at punishment was deficient or prejudicial.  *Id.*  Petitioner presents nothing to rebut these findings or the record.

### 4. Presenting Witnesses during Punishment Phase

Petitioner complains that counsel was ineffective for not investigating and calling witnesses during the punishment phase of trial.  (Docket Entry No.2).  The state habeas courts found that based on her credible affidavit, Attorney Parks "repeatedly asked the applicant if there were any people who he wanted to testify on his behalf in punishment, and the applicant stated there were none."  *Id.*, pages 99, 111.  The state courts' concluded that petitioner failed to show that counsel's decision not to call any witnesses during the punishment phase constituted effective assistance of counsel.  *Id.*, page 111.

Petitioner states no facts to contravene the state habeas courts' findings. Moreover, petitioner does not name any potential witnesses who would have testified on his behalf during the punishment phase, nor does he state what information these witnesses would have provided. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). Moreover, "[w]hen, as here, the defendant has given counsel reason to believe that certain investigations would be fruitless or harmful, the failure to pursue such investigations may not later be challenged as unreasonable." *Carter v. Johnson*, 131 F.3d 452, 465 (5th Cir.1997). Therefore, he fails to show either deficient performance or prejudice.

### 5. Objection to Hearsay Testimony

Petitioner complains that Parks was ineffective for not objecting to investigator Gary Johnson's hearsay testimony that Smith told him that petitioner "had progressively become more adamant about having his wife killed, and the last day or so, because of something that was occurring, he had become very agitated and wanted it done rapidly." *Wormington v. State*, No.01-06-00542, Reporter's Record, Volume 4, page 95. Respondent maintains the testimony is not hearsay because it was not offered in evidence to prove the truth of the matter asserted but to explain why Johnson set up the phone call with petitioner. (Docket Entry No.16).

Attorney Parks attested that she could have voiced a hearsay objection to Johnson's testimony regarding things Smith said about petitioner, but she did not. *Ex parte Wormington*, Application No.WR-69,416-03, page 99. Parks attested that she did not recall why she did not voice such objection but that she does not believe that the jury verdict would have been different if she had objected and the testimony had been kept out of evidence. *Id.,* page 99.

19

The state habeas courts' found that based on Attorney Parks's credible affidavit, her failure to object to Gary Johnson's testimony regarding informant Marshall Smith's statements about petitioner did not constitute ineffective assistance of counsel. *Id.,* page 111.

The Court declines to speculate on whether trial counsel's forbearance or failure constitutes reasonable trial strategy or whether the state district court would have found the statements to be inadmissible hearsay. Even if counsel's failure to object constitutes deficient performance, petitioner fails to show that he was prejudiced by her failure to object to Johnson' testimony, particularly in light of the testimony the jury heard from Johnson about his conversations with petitioner.

### 6. Analysis of Audio Tapes

Petitioner maintains that his trial counsel was ineffective because she did not have the audio tapes analyzed because had she done so, she would have discovered that the tapes had been altered. (Docket Entry No.2).

Based on Parks' affidavit, the state habeas courts' found that petitioner did not indicate to Parks that transcripts of the audio tapes, which she provided to him, were false or altered in such a way as to make the substance misleading. *Id.* at 112. The courts also found that Parks compared the transcription and the redacted copies with the original tapes and that she did not have the audio tapes scientifically analyzed because she saw no need. *Id.* The state courts found that petitioner failed to show that he was denied the effective assistance of counsel with respect to the tapes and transcriptions. *Id.*

Petitioner presents no evidence to rebut these findings and no evidence to show that the tapes had indeed been altered.

<u>7. Motion for New Trial</u>

Finally, petitioner claims that his trial counsel was ineffective for not filing a motion for new trial.  (Docket Entry No.2).  Parks attested in state habeas proceedings that she did not file a motion for new trial because she was appointed for purposes of trial only; she did, however, file a notice of appeal immediately after trial to preserve petitioner's appellate rights and thereafter, withdrew.  *Ex parte Wormington*, Application No.WR-69,416-03, page 99.  The state habeas courts found Parks's attestation credible and noted that "she was not hired or appointed to file a motion for New Trial on the applicant's behalf."  *Id.*, page 112.  The record shows that on June 7, 2006, Parks filed a notice of appeal, in which she also moved to withdraw and requested the state district court to immediately appoint appellate counsel to represent petitioner.  *Wormington v. State*, No.01-06-00567-CR, Clerk's Record, page 188.  Petitioner signed the Notice of Appeal.  *Id.*  The state district judge granted the motion to withdraw and petitioner's motion to appoint appellate counsel the same day.  *Id.*, page 189.  On June 14, 2006, the state district court appointed appellate counsel to represent petitioner.  *Id.*, page 191.

Petitioner's claim is conclusory and lacks merit.

In summary, petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the state court findings resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light the evidence presented at trial.  Accordingly, respondent is entitled to summary judgment on petitioner's ineffective assistance of counsel claims.

### B. Procedural Bar

Respondent claims that this Court is procedurally barred from considering petitioner's claims regarding (a) the state district court's denial of the motion to include an entrapment instruction in the jury charge, (b) the denial of counsel when investigator Johnson conversed with petitioner over the telephone about the solicitation offense, (c) the state district judge's bias against him because of her involvement in his divorce proceedings; (d) the altered copies of the audio tapes that were admitted at trial; (e) the admission of extraneous offenses during the punishment phase of trial, including evidence of the unadjudicated aggravated sexual assault of Daugherty; and (f) Johnson's allegedly recorded phone conversations without petitioner's knowledge.  (Docket Entry No.16).  Respondent notes that petitioner raised these claims in his state habeas application but the state habeas courts found that such claims should have been raised on direct appeal, and found that he was procedurally defaulted from litigating such claims in his state habeas application.  (*Id.*).

Citing *Ex parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004), the state habeas court held that "[f]ailure to litigate a 'record claim' in the trial court and on direct appeal waives the claim for further review."  *Ex parte Wormington*, Application No.WR-69,416-03, page 112.  The state habeas courts found the aforementioned claims were "record" claims and that petitioner had waived review of such claims.  *Id.*, pages 112-113.  Notwithstanding the procedural bar, the state habeas courts alternatively found that petitioner failed to demonstrate that (a) he was entitled to a jury instruction on entrapment and that the denial of the same so infected the entire trial that the resulting conviction violated due process; (b) the state district court erred in admitting into evidence the redacted audio tapes, petitioner's prior convictions,

22

and testimony about the unadjudicated aggravated sexual assault; and, (c) the tape recordings were illegally obtained.  *Id.*

The AEDPA requires an applicant for federal habeas relief to present his claims in state court and to exhaust all state court remedies through proper adjudication.  See 28 U.S.C. § 2254(b).  The Fifth Circuit has consistently explained:

> If a petitioner wishes to exhaust his constitutional claims, he is expected to present them before the state courts in a procedurally correct manner.  If he fails to do so, he has failed to give the state a fair opportunity to pass upon those claims and, as a result, has failed to meet the requirements of exhaustion.

*McGee v. Estelle*, 704 F.2d 764, 768 (5th Cir. 1983).  In this case, the state habeas court expressly stated that the aforementioned claims were waived because petitioner did not raise them on direct appeal.  Texas law is well-settled "that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal[,]" therefore, claims that should have been but were not raised on direct appeal are procedurally defaulted.  *Ex parte Gardner*, 959 S.W.2d 189, 199-200 (Tex. Crim. App. 1998); *see also Ex parte Townsend*, 137 S.W.3d at 81.

In general, a federal court may not review a state court decision that rests on an adequate and independent state procedural default unless the habeas petitioner shows "cause" for the default and "prejudice attributable thereto" or demonstrates that the failure to consider the federal claim will result in a "fundamental miscarriage of justice."  *Harris v. Reed*, 489 U.S. 255, 262 (1989).  When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review.  *See id.*; *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).  The Fifth Circuit has recognized this Texas procedural rule as stated in *Ex parte Gardner* as being "firmly established" and "an

23

adequate state ground capable of barring federal habeas review." *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004) (citations omitted).  That the state habeas court made several conclusions of law to the effect that the aforementioned claims were "substantively meritless does not undermine the explicit invocation of the procedural bar." *Id*. at 718.

Petitioner makes no allegation that he is actually innocent of solicitation of capital murder.  Instead, petitioner contends that the defaulted claims are the result of the ineffective assistance of his appellate counsel, who failed to raise such issues on appeal.  (Docket Entry No.17).  In certain circumstances counsel's ineffective assistance is sufficient to excuse a procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  However, a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  *Murray v. Carrier*, 477 U.S. 478, 489 (1986).  To the extent that petitioner contends his appellate counsel was ineffective by not raising one or more of the issues on direct appeal, the claim is unexhausted and, under the Texas abuse-of-the-writ doctrine, he cannot return to state court for purposes of exhausting the claim.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4.  Therefore, such claim is procedurally defaulted.  A procedurally defaulted ineffective assistance claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the cause-and-prejudice standard with respect to the ineffective assistance claim itself.  Petitioner offers no explanation for not raising an ineffective assistance claim against his appellate counsel in his state habeas application.  Therefore, his ineffective assistance claim against appellate counsel cannot serve as cause to excuse the procedural default of another habeas claim.

Accordingly, the Court concludes that petitioner's claims regarding (a) the state district court's denial of the motion to include an entrapment instruction in the jury charge, (b)

the denial of counsel when investigator Johnson conversed with petitioner over the telephone about the solicitation offense, (c) the state district judge's bias against him because of her involvement in his divorce proceedings; (d) the altered copies of the audio tapes that were admitted at trial; (e) the admission of extraneous offenses during the punishment phase of trial; and (f) Johnson's recorded phone conversations without petitioner's knowledge are procedurally barred and are not entitled to consideration on federal habeas review.  Respondent is entitled to summary judgment on this ground.

### C. Perjured Testimony

Petitioner claims that the State "gave the jury false statement" that he had solicited a contract to have his ex-wife killed even though petitioner never said in any phone conversation "to have his wife killed."  (Docket Entry No.2).  Petitioner also complains that the prosecutor told the jury in closing arguments during the punishment phase that he raped Amber Daughtery even though he had not been convicted of the offense and the prosecutor knew the charge was going to be dismissed as soon as petitioner was convicted of solicitation of capital murder.  (*Id.*).

The state habeas courts found that petitioner failed "to show that the State presented false testimony, that the State knew or had reason to know that the testimony was false, and that any false testimony was material."  *Ex parte Wormington*, Application No.WR-69, 416-03, page 113.

It is well-settled that the State may not knowingly use perjured testimony or allowed perjured testimony to remain uncorrected.  *Giglio v. United States*, 405 U.S. 150, 153-54 (1972).  To prove a due process violation for use of perjured testimony, a petitioner must establish that (1) the testimony in question was actually false; (2) the prosecutor was aware it

was false, and (3) the testimony in question was material.  *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).  Perjured testimony is material only when there is a reasonable likelihood that the false testimony could have affected the judgment of the jury.  *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000).

Petitioner states no facts and makes no references to any testimony to substantiate his conclusory allegations that the State knowingly used perjured testimony at trial.  The state courts' determinations are not in conflict with established federal law and are not objectively unreasonable; nor has petitioner rebutted the presumption of factual correctness with clear and convincing evidence.  Accordingly, respondent is entitled to summary judgment on this ground.

### III. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted).  Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001).  On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248

(5th Cir. 2000).  A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability from this decision will not issue.

## IV. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state proceedings, the Court ORDERS the following:

1. Respondent's motion for summary judgment (Docket Entry No.16) is GRANTED.

2. Petitioner's petition for federal habeas relief is DENIED.

3. A certificate of appealability is DENIED.

4. All other pending motions, if any, are DENIED.

5. This habeas action is DISMISSED with prejudice.

The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 14th day of May, 2010.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE